Doris L. SASSOWER, Plaintiff,

v.

CITY OF WHITE PLAINS, County of Westchester, Patrick Gleason, individually and as Chief of Police of the City of White Plains, Police Officer Dennis Keidong, in his individual and official capacities, Police Officer Brian Buchanan, in his individual and official capacities, Police Officer Robert Graham, in his individual and official capacities, Auxiliary Police Officer Howie Cohen, in his individual and official capacities, Lieutenant Donald Carlton, in his individual and official capacities, Lieutenant Tom Watson, in his individual and official capacities, Joseph Van Stippen, Le Pastis, Ltd. d/b/a Le Pastis Restaurant and Bistro Pastis, and "John Does" Nos. 1–10, Defendants.

No. 89 Civ. 1267 (MJL).

United States District Court, S.D. New York.

Feb. 1, 1998.

Wallman & Wechsler, P.C., New York City by Jay Wallman, Andre L. Ferenzo, for Plaintiff Doris L. Sassower.

Landman Corsi Ballaine & Ford, Newark, NJ by John A. Bonventre, George L. Vitureira, for Defendant City of White Plains and Police Officer Defendants.

## OPINION AND ORDER

LOWE, District Judge.

This action arises out of the 1986 arrest and prosecution of Plaintiff Doris Sassower by the Defendants. Plaintiff brings various claims under 42 U.S.C. § 1983 ("Section 1983") and state law, including a Section 1983 claim for malicious prosecution. The moving Defendants, City of White Plains, Patrick Gleason, Police Officers Dennis Keidong, Vincent Finnegan, Brian Buchanan, and Robert Graham, and Lieutenants Donald Carlton and Tom Watson (collectively, the "Municipal Defendants") now move for summary judgment on Plaintiff's Section 1983 malicious

prosecution claim under Federal Rule of Civil Procedure 56. For the reasons discussed below, Municipal Defendants' motion is denied.

## BACKGROUND [1]

The Court assumes familiarity with the facts of this case, *see Sassower v. City of White Plains*, No. 89 Civ. 1267, 1995 WL 222206 (S.D.N.Y. April 13, 1995), and will briefly summarize the facts pertinent to this motion. On February 25, 1986, Plaintiff and two acquaintances dined at Le Pastis, a restaurant in the City of White Plains. At the end of the meal, a dispute arose between the restaurant management and Plaintiff's group. Plaintiff left the restaurant after only a portion of the bill was paid. White Plains City police officers then arrested Plaintiff for resisting arrest and disorderly conduct. That night, Plaintiff was released from custody and given a desk appearance ticket directing her to appear in court on March 3, 1986.

On February 27 and 28, 1986, defendant police officers filed misdemeanor informations against Plaintiff, charging her with resisting arrest, disorderly conduct, and theft of services. On March 3, 1986, Plaintiff was arraigned on those charges. It is undisputed that Plaintiff was not required to post bail. In September 1986, after a three-day trial, a jury convicted Plaintiff of theft of services and resisting arrest, but acquitted her on the disorderly conduct charge. In 1988, the Appellate Term of the Supreme Court of New York vacated both of Plaintiff's convictions. *People v. Sassower*, No. 88–142, *slip. op.* at 1–2 (N.Y.App. Term Nov. 21, 1988).

Plaintiff subsequently instituted this civil suit, claiming, among other things, that the Municipal Defendants maliciously prosecuted her for disorderly conduct under color of state law in violation of her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments ("Malicious Prosecution Claim"). Municipal Defendants now move for summary judgment on the Malicious Prosecution Claim, arguing that Plaintiff can-

---

1. The following facts are undisputed or, where disputed, have been taken in the light most favor- able to Plaintiff.

not satisfy the post-arraignment deprivation of liberty element of the claim.

Plaintiff asserts that she suffered a post-arraignment deprivation of liberty because her right to travel was "restricted" during the criminal proceedings. Pl.'s Decl. ¶ 2. Plaintiff explains that, in order to appear in court, she had to "cut short" a "planned trip to Arizona." *Id.*; 5/2/86 Tr. (Judge Holden, Jr.) at 21–23. Defendants deny that Plaintiff's right to travel was restricted, claiming that she traveled to Arizona while the criminal charges were pending. Defs.' Rule 56.1 Statement ¶ 5. Plaintiff also attests that the criminal charges "had a profound effect on her professional life" and prevented her from practicing law. Pl.'s Aff. ¶ 22.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record favoring the party opposing the motion to support a jury verdict in that party's favor. *Id.* at 249–50. "[S]ummary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### II. *Malicious Prosecution Claim*

In *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality), a plurality of the Supreme Court held that, in order to maintain a Section 1983 claim for malicious prosecution, a plaintiff must establish a deprivation of liberty under the Fourth Amendment. The Supreme Court recognized that Section 1983 "is not itself a source of substantive rights, but merely provides a method of vindicating federal rights elsewhere conferred." *Id.* at 271. The plurality, however, decided that the Fourteenth Amendment's right to substantive due process is not the proper source of constitutional protection for a Section 1983 claim for malicious prosecution. *Id.*

To establish a violation of Fourth Amendment rights, a plaintiff must show a pretrial deprivation of liberty. *Id.* at 274. The *Albright* plurality, however, never addressed what type of liberty deprivation would satisfy the constitutional injury requirement for malicious prosecution claims because the plaintiff had failed to assert a Fourth Amendment violation. *Id.* at 271. However, Justice Ginsburg, in a concurring opinion, articulated the type of constitutional injuries that might support a malicious prosecution claim under the Fourth Amendment. *See id.* at 279 (Ginsburg, J., concurring). Justice Ginsburg asserted that a party is "seized" in a constitutional sense "so long as he is bound to appear in court and answer the court's charge." *Id.* Justice Ginsburg wrote:

> A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject ... to the condition that he seek formal permission before the court ... before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional drain of preparing a defense.
>
> *Id.*

The Second Circuit further developed the principles set forth in *Albright* in *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), and *Murphy v. Lynn*, 118 F.3d 938 (2d Cir.1997). In *Singer*, the Second Circuit recognized that "the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution; however, *Albright* does not bar [plaintiff] from asserting a federal claim for malicious prosecution under the Fourth

Amendment." *Id.* The court held that the "Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.* Accordingly, a plaintiff asserting a Section 1983 malicious prosecution claim must demonstrate a deprivation of liberty "consistent with the concept of 'seizure.'" *Id.* This added requirement ensures that any damages awarded for such a claim compensates for a constitutional deprivation. *Id.*

The *Singer* court further explained that under New York law, if a person is arrested without a warrant, the tort of malicious prosecution covers only post-arraignment deprivations of liberty. *Id.* at 117. The court, however, refrained from deciding whether there was a seizure, noting that there were no factual findings as to whether the plaintiff was required to post bail or had been subjected to travel restrictions. *Id.* Nevertheless, the court, in dicta, expressed reservations about whether a plaintiff who was arraigned and released on a personal recognizance bond without bail would show a deprivation of liberty that would rise to the level of a constitutional injury. *Id.*

In a novel constitutional decision, the Second Circuit in *Murphy* addressed the specific types of deprivations of liberty that would satisfy the constitutional injury requirement of Section 1983 malicious prosecution claims. In *Murphy,* the plaintiff had been charged with disorderly conduct, resisting arrest, and two counts of felony assault. 118 F.3d at 942. After arraignment on these charges, the plaintiff was released on his own recognizance, on the condition that he return to court when his appearance was required and that he not leave the State of New York while the criminal charges were pending. *Id.* During the following year, the plaintiff made eight court appearances with respect to these charges. *Id.*

The indictment was subsequently dismissed on speedy trial grounds. *Id.* The plaintiff then brought a Section 1983 action for malicious prosecution under the First, Fourth, Fifth, and Fourteenth Amendments

against the arresting police officers and the town police department. *Id.* At trial, the district court charged the jury on the deprivation of liberty element of the malicious prosecution claim as follows:

> You may consider the requirement to appear in court as being a restriction on his liberty, and if you find that he was forbidden from leaving the State of New York, that may be regarded by the jury as significant deprivation of liberty . . .

*Id.* at 943. The jury returned a verdict in the plaintiff's favor. *Id.*

On appeal, the Second Circuit affirmed the jury award. *Id.* Regarding the issue of "seizure" under the Fourth Amendment, the Second Circuit noted that liberty deprivations are not limited to physical detentions. *Id.* at 945. The court articulated the question before the court as "whether the order that [plaintiff] not leave the State of New York *or* the requirement that he attend court appointments constituted a 'seizure' within the meaning of the Fourth Amendment." *Id.* (emphasis added). The court concluded that both conditions constitute "seizures" within the meaning of the Fourth Amendment. *Id.* at 945–46. The court explained that:

> In the present case, one of the conditions imposed upon [the plaintiff's] release was that he not leave the State of New York pending resolution of the charges against him, an obvious curtailment of his otherwise unquestionable constitutional right to travel outside the state. He was further obligated to appear in court in connection with those charges whenever his attendance was required. He indeed was called for court appearances some eight times during the year in which his criminal proceeding was pending. Under the authorities discussed above, therefore, we reject defendants' contention that the conditions imposed following the initiation of the criminal proceeding against [plaintiff] carried no Fourth Amendment implications.

*Id.*

In its reasoning, the court relied upon Justice Ginsburg's concurrence in *Albright* that a defendant remains "seized . . . so long as he is bound to appear in court and answer

the court's charges." *Id.* The Court also relied upon *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), which held that the liberties protected by the Fourth Amendment included the accused's freedom to travel while on pretrial release. *Id.* at 945.

Municipal Defendants misconstrue the *Murphy* decision as requiring both an infringement on a plaintiff's right to travel and required court appearances in order to satisfy the "seizure" element of a Section 1983 malicious prosecution claim. Defs.' Mem. of Law at 8. Municipal Defendants argue that Plaintiff's required court appearances alone fail to constitute a "seizure." *Id.*

Contrary to Municipal Defendants' assertions, the *Murphy* court never suggests that it required a combination of the two conditions to constitute a "seizure." Instead, the Second Circuit made clear that each condition, independent of the other, constitutes a "seizure." *Murphy*, 118 F.3d at 946; *see also id.* at 953 (Jacobs, J., dissenting) ("[S]trange is the majority's holding that [plaintiff] was seized within the meaning of the Fourth Amendment because he was required to appear in court."); *Willner v. Town of North Hempstead*, 977 F.Supp. 182, 189 (E.D.N.Y.1997) (finding that, under *Murphy*, defendant's required court appearances established "seizure" under Fourth Amendment in order to sustain Section 1983 malicious prosecution claim). The Municipal Defendants erroneously seize upon the language in the *Murphy* court's conclusion that "the *restrictions* imposed on [plaintiff] constituted a *seizure* within the meaning of the Fourth Amendment." *See* Defs.' Mem. of Law at 8 (quoting *Murphy*, 118 F.3d at 945) (emphasis added). Read in the context of the entire opinion, the language in *Murphy* relied upon by Municipal Defendants does not support their argument.

In light of *Albright* and *Singer*, the Court notes that Plaintiff cannot maintain her Malicious Prosecution Claim under the rubric of substantive due process. *See Albright*, 510 U.S. at 271; *Singer*, 63 F.3d at 114.[2] Despite this hurdle, the claim nonetheless survives under a Fourth Amendment analysis. Although there were no allegations of physical detention by Municipal Defendants, Plaintiff was required to appear in court on at least three occasions. Moreover, Plaintiff, by affidavit, attests that, in order to appear in court, she had to "cut short" a "planned trip to Arizona." Pl.'s Decl. ¶ 2. Plaintiff, therefore, has pointed to facts from which a jury could find that the criminal proceedings interfered with her right to travel. Consistent with the Second Circuit's decision in *Murphy*, the Court concludes that these allegations raise a genuine issue of fact as to the deprivation of liberty element of the Malicious Prosecution Claim. Accordingly, Municipal Defendants' motion for summary judgment on the Malicious Prosecution Claim is denied.

## CONCLUSION

The Court hereby denies Municipal Defendants' motion for summary judgment on the Malicious Prosecution Claim.[3]

It is So Ordered.

---

**2.** Nor can Plaintiff maintain the Malicious Prosecution Claim under the First and Eighth Amendments. Although the court in *Singer* recognized that a malicious prosecution claim can theoretically be based upon a specific constitutional right other than the Fourth Amendment, *see Singer*, 63 F.3d at 116 n. 3, Plaintiff has provided no evidence to support such claims aside from conclusory allegations that the First and Eighth Amend-

ments are related to her malicious prosecution claim.

**3.** The Court notes that, in her declaration, Plaintiff asks the Court to impose Rule 11 sanctions against Municipal Defendants. *See* Pl.'s Decl. at 13. If Plaintiff seriously seeks Rule 11 sanctions, she must follow the procedures required by the rule.